1  William D. Hyslop
2  United States Attorney
   Eastern District of Washington
3  David M. Herzog
4  Assistant United States Attorney
   Post Office Box 1494
5  Spokane, WA 99210-1494
6  Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| UNITED STATES OF AMERICA, | Case No. 2:19-CR-00086-WFN |
|---|---|
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | |
| CHARLES JAY EGLET (a/k/a "char.zard99" and "charlieeglet"), | Sentencing Hearing: May 21, 2019, at 10:00 a.m. Spokane, Washington |
| Defendant. | Victim Impact Statements Attached to PSIR |
| | Court: Hon. Wm. Fremming Nielsen Senior United States District Judge |

Plaintiff United States of America, by and through William D. Hyslop, United States Attorney for the Eastern District of Washington, and David M. Herzog, Assistant United States Attorney for the Eastern District of Washington, hereby submits the following Sentencing Memorandum with regard to Defendant Charles Eglet ("Defendant").

United States' Sentencing Position – Charles Eglet – page 1

Pursuant to the Rule 11(c)(1)(C) plea agreement in this case (ECF No. 37), the United States recommends the following sentence: 270 months (22.5 years) in custody, a lifetime of supervised release, restitution as requested and supported by Defendant's victims, a fine only if Defendant has resources to pay a fine after paying restitution, a mandatory special assessment of $200, and a $5,000 special assessment absent a finding of indigence by the Court.

The United States' sentencing position is based on the attached memorandum of points and authorities, the victim impact statements, the restitution requests submitted and forthcoming from victims, the files and records in this case, and such further evidence and argument as the Court may permit.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I.  Introduction

Defendant Charles Eglet ("Defendant") is the person about whom parents warn their teenage daughters. Defendant's predation of teenage girls is the ultimate cautionary tale for the age of smartphones and the Internet: he repeatedly identified susceptible teenagers on social media, reached out to them with compliments, and pretended to be only a little older, all to convince them to meet him in person for sex. Making already horrible matters worse, Defendant was also a high school football coach, which gave him immediate and unfettered access to an untold number of teenage girls. His conduct is the terrifying stuff of nightmares for teenage girls and their parents. As a society, we entrust teachers and coaches to protect our children *from* sexual predators,

not to be the very sexual predators who seek to violate them.  But, Defendant's desire to have sex with teenage girls was so strong that it overcame everything else – morality, societal norms, and the law.

For that conduct, Defendant must be punished, and punished significantly.  The United States and defense have agreed that a sentence of 22.5 years in custody, to be followed by a term of Supervised Release between 20 years and the remainder of Defendant's lifetime, is appropriate.

It is a long sentence, and it is indisputably warranted.  Defendant, who was 29 years old, engaged in penetrative sexual intercourse with girls who were only 14 and 15 years old.  His *modus operandi* of pretending to be much younger than he was, to deceive these girls into meeting him in person for sex, demonstrates a level of cunning and sexual depravity that warrants every minute of a 270-month sentence.  Such a sentence is necessary to protect the community from Defendant, and to deter other likeminded adult men who would prey on the teenage girls of Eastern Washington.

## II.    Procedural Posture

On February 12, 2020, pursuant to Federal Rule of Criminal Procedure Rule 11(c)(1)(C), Defendant pleaded guilty to Counts One and Two of an Information Superseding Indictment charging him with Production of Child Pornography of Minor Victim 1, in violation of 18 U.S.C. § 2251(a), (e) (Count One), and Online Enticement of Minor Victim 2, in violation of 18 U.S.C. § 2422(b) (Count Two).

Pursuant to a global disposition with Spokane County, the United States has agreed to dismiss the underlying Indictment against Defendant, which charged him with numerous offenses: Online Enticement of a Minor, in violation of 18 U.S.C. § 2422(b) (Count One); Sex Trafficking by Force, Fraud, or Coercion, in violation of 18 U.S.C. § 1591(a)(1), (b)(1) (Count Two); Child Sex Trafficking, in violation of 18 U.S.C. § 1591(a)(1), (b)(2) (Count 3); Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A), (b)(1) (Count Four); Production of Child Pornography, in violation of 18 U.S.C. § 2251(a), (e) (Count Five); and Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2) (Count Six).

All of these charges arose from Defendant's conduct with Minor Victim 1, who is from Spokane, Washington.

Also pursuant to the global disposition, the Prosecuting Attorney for Spokane County has agreed to dismiss its charges against Defendant, which included Rape of a Child in the Third Degree, in violation of RCW § 9A.44.079 (Count One); and Child Molestation in the Third Degree, in violation of RCW § 9A.44.089 (Count Two). These charges arose from Defendant's conduct with Minor Victim 2, who is from Moses Lake, Washington.

**III.   Facts**

The facts are set forth in the *Factual Basis and Statement of Facts* section of the plea agreement (ECF No. 37, ¶ 6) and the *Offense Conduct* section of the PSIR. (ECF No. 42, ¶¶ 8-35.) The United States has no objections to the PSIR.

Defendant's conduct was indisputably predatory, deceptive, and ongoing. It is important that the Court bear in mind that Defendant reached out to numerous teenage girls, not just Minor Victims 1 and 2 as set forth in the Plea Agreement and Offense Conduct section of the PSIR.

In July 2018, Spokane police received a report that Defendant was communicating with a 16-year-old girl, and had tracked her physical location via the Snapchat application. (ECF No. 42, ¶ 65.) Defendant approached the girl at a park and invited her to his house, but her friends called the police. (*Id.*)

In March 2019, law enforcement interviewed yet another 14-year-old girl, who reported that she too, had been corresponding with Defendant via Snapchat. (ECF No. 42, ¶ 66.) Defendant told that victim that he 23 or 25 years old, and the girl clearly indicated that she was 14. (*Id.*) When that girl told Defendant that he should not be communicating with someone so young, Defendant told her that he wanted to get to know her better. (*Id.*) The conduct stopped only after the girl's father became involved and they blocked Defendant from social media. (*Id.*)

Police also interviewed a different 15-year-old girl who told police that Defendant contacted her via Snapchat in the summer of 2018, and identified himself as a college student. (ECF No. 42, ¶ 67.) That girl blocked Defendant from contacting her after she learned that Defendant had *also* contacted her minor-aged cousin. (*Id.*)

It is clear from Defendant's conduct that his appetite was as unlimited as his efforts were tireless. Taking into account *only the incidents that were reported to the*

*police*, Defendant reached out to at least half-a-dozen different girls.  The PSIR fairly notes that Defendant "did not request to meet, or request photos" from one of these victims (ECF No. 42, ¶ 66), and thankfully, through the intervention of police, friends, and family members, Defendant was unable to consummate his desire to have sex with every one of his victims.  But that is only because Defendant was not always to gain the two things he needed to groom a victim: time and access.  If Defendant had enough time to successfully groom each of these girls as he did Minor Victims 1 and 2, there is every reason to believe that his conduct with each of them would have ended up in the same tragic way as his sexual misconduct with Minor Victims 1 and 2: full sexual assaults.

Defendant's sexually predatory conduct warrants a sentence of 270 months, and a lifetime of Supervised Release.

**IV.    Analysis of the Plea Agreement and Presentence Report**

In consultation with Defendant's victims, the federal and state prosecutors in this case recognize the equities, including striking a balance between obviating the need for cross-examination of minor victims with a potentially longer sentence upon conviction after trial.  In that context, the United States has agreed with Defendant's federal and state defense counsel and Defendant that the following sentence is appropriate, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C): 270 months in custody, followed by a lifetime of supervised release.  (ECF No. 37.)

For purposes of calculating the appropriate range under the United States Sentencing Guidelines (the "Guidelines"), the United States concurs with the United

States Probation Officer that Defendant's final adjusted offense level is Level 43. (ECF No. 42, ¶¶ 40-64.) Prior to the offense level cap imposed by the Guidelines, Defendant's offense level is 46; his misconduct is literally off the charts. (*Id.*) Defendant is in Criminal History Category I. (ECF No. 42, ¶ 72.) Defendant's applicable Guidelines range is life imprisonment. (ECF No. 42, ¶ 94.)

V.    **The United States' Sentencing Recommendation**

In light of the Plea Agreement, Federal Rule of Criminal Procedure 11, the United States Sentencing Guidelines, and the factors set forth at 18 U.S.C. § 3553, the United States respectfully recommends 270 months of imprisonment, to be followed by a lifetime term of supervised release. The United States recommends restitution and special assessments of $200 (mandatory) and $5,000 (absent a finding of indigence).

The United States respectfully submits that such a sentence is appropriate in light of the factors set forth at 18 U.S.C. § 3553. A lengthy sentence is necessary given the severity of Defendant's conduct, but is no longer than necessary to achieve the statutory goals of sentencing, including just punishment, deterrence, and the protection of the community—particularly the teenage girls of Eastern Washington. The United States anticipates that Defendant will recommend a 20-year term of Supervised Release, but that is not enough. Defendant's repetitive, egregious conduct is driven by his sexual interest in minors, which is unlikely to change. Defendant must be supervised for life.

### A.     The Nature and Seriousness of the Offense

It is difficult to comprehend – or overstate – the manipulative egregiousness of Defendant's conduct. Defendant is a predator. Not only did he engage in illicit sexual conduct by deceiving his victims about his age, he memorialized images of child abuse for posterity. It is the rare case in which the United States can so readily identify the specific location of child sexual abuse, but here, Defendant assaulted Minor Victim 1 in his parents' house at around the time it was for sale. FBI agents matched the images of child pornography that Defendant produced of Minor Victim 1 with photographs of Defendant's parents' home that were posted on publicly-available realtor websites. (ECF No. 42, ¶ 23.) What this conduct shows is how brazen and unquenchable Defendant's conduct was. By recording himself engaging in sex with Minor Victim 1 at his parents' home, Defendant violated not only the law but also his own family's trust. Truly, there appear to have been no limits to Defendant's seeking of sexual gratification.

It is not as though Defendant thought these girls were adults or close to it; each of them clearly identified their ages to Defendant, and some of them even told him he should not be communicating with them. Defendant was on notice, and he ignored it.

Troublingly, as a person who was around high school girls all the time, Defendant should have known that his conduct was wrong. He should never have reached out to any of these girls in the first place, but certainly once they identified their ages to him, he should have withdrawn and sought sexual counseling. But that is not what he did; he pursued girl after girl, using Snapchat, the social media platform that teenage girls

United States' Sentencing Position – Charles Eglet – page 8

prefer. When one of them shut him down, he would just move on to the next susceptible minor. The reason for this is both obvious and chilling: these girls were nothing more than objects of sexual desire to Defendant, not human beings with their own individuality, sexual sanctity, and need to be protected. The sordid, undisputed facts demonstrate that Defendant would stop at nothing to satisfy his own sexual desires, regardless of the physical, psychological, and emotional consequences to his victims. Defendant's conduct demands 270 months of incarceration and a lifetime of supervised release; his sexual interest in minor girls is clearly insatiable and longstanding.

**B.    Defendant's Personal History and Characteristics**

Because of COVID-19, the Probation Officer was not able to meet with Defendant to interview him to obtain information about his personal history and characteristics. Based on information in the public sphere, including websites, news sources, and social media, it appears that Defendant enjoyed a stable upbringing in a loving family.

Defendant has no adult criminal history, but that fact erases neither Defendant's sexual interest in minors nor the hideousness of his actions. To the contrary, unlike many Defendants before this Court, Defendant was educated, employed, and appears to have had significant resources and opportunities available to him. But he has squandered what could have been a socially productive life, because of his relentless sexual interest in minors – which is sad, but not nearly as tragic for Defendant as it has been for his victims. In short, the United States cannot identify anything about Defendant's personal history and characteristics that is particularly mitigating.

### C. Just Punishment and Respect for the Law

Defendant's repeated, egregious exploitation of minors conduct speaks for itself, and demands serious punishment. The only mechanism for creating accountability in this process is the sentence imposed by this Court. As the victim impact statements from Defendant's victims and their families articulate with pain and poignancy, Defendant's victims and the community cry out for justice from this Court. In particular, the victim impact statements by Minor Victim 1 and her father have articulated the pain and trauma Defendant caused much more eloquently than the United States ever could.

### D. Deterrence

Defendant's pervasive pattern of exploitative conduct against teenage girls is significant, and it is clear that Defendant is not specifically deterrable: after his victims themselves put him on notice that he was engaging in improper contacts with minor girls, he simply switched to pursue *other* minor girls.

The United States submits that 270 months of imprisonment followed by a lifetime term of supervised release is necessary to afford specific deterrence to Defendant, as well as general deterrence to others in the community who would perpetrate such crimes. Adult men must know that the consequences of sex with minors is severe; only if people with active sexual interests in minors know that they may go to federal prison for a long time will they be disincentivized from acting on their worst impulses. 270 months in custody is necessary here to create a true deterrent effect.

### E. Protection of the Public

Defendant unquestionably presents a danger to the community, and will for a long time. A significant sentence is necessary because it will protect the minors in Eastern Washington for a significant period, and a lifetime of supervised release is appropriate here, given the need for ongoing monitoring of Defendant's conduct.

The United States is concerned by the recidivism rate for sex offenders generally. *See* Dept. of Justice, *Bureau of Justice Statistics*, P. Langan, E. Schmitt, & M. Durose, Recidivism of Sex Offenders Released in 1994, p. 1 (Nov. 2003) (reporting that compared to non-sex offenders, released sex offenders were four times more likely to be rearrested for a sex crime, and that within the first three years following release 5.3% of released sex offenders were rearrested for a sex crime); *Smith v. Doe*, 538 U.S. 84, 104 (2003) ("The risk of recidivism posed by sex offenders is 'frightening and high.'") (quoting *McKune v. Lile*, 536 U.S. 24, 34 (2002)).

The United States Sentencing Guidelines also support a life term of supervised release. Under U.S.S.G. § 5D1.2(b), "[i]f the instant offense of conviction is a sex offense . . . the statutory maximum term of supervised release is recommended." The statutory maximum term of supervised release is life. (ECF No. 42, ¶¶ 95-99.)

### F. Avoidance of Unwarranted Sentencing Disparities

Mindful that the Guidelines must be "the starting point and the initial benchmark," *United States v. Carty,* 520 F.3d 984, 991–92 (9th Cir. 2008), the United States submits that the recommended sentence is appropriate in this case. It is significantly beneath the

United States' Sentencing Position – Charles Eglet – page 11

life sentence recommended by the Guidelines, and is the result of a complicated global plea agreement with state authorities that prevents Defendant's victims from having to face cross-examination before a roomful of strangers about the horrendous sexual trauma that Defendant visited upon them. The sentence is in line with other sentences for similarly situated Defendants in this District. The United States urges the Court to accept the Rule 11(c)(1)(C) Plea Agreement and impose a sentence consistent with it.

### G. Fine, Special Penalty Assessment, Restitution, and Forfeiture

The United States and Defendant are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate. (ECF No. 37, ¶ 11). The Probation Officer has not been able to analyze Defendant's financial condition. The United States recommends that the Court impose a fine if Defendant has the means to pay a fine *after* paying restitution to Defendant's victims.

A $200 special assessment is mandatory.

The United States defers to the Court regarding Defendant's indigence and the applicability of the $5,000 Special Assessment pursuant to the Justice for Victims of Trafficking Act of 2015.

A preliminary order of forfeiture has been submitted to the Court. (ECF No. 40.)

The United States notes that restitution is mandatory, and recommends restitution consistent with the restitution requests from the victims and their families that are supported by the proper documentation. The United States is working with the victims

to present restitution requests to the Probation Office, defense, and Court prior to sentencing.

## VI. Conclusion

The United States recommends that the Court accept the Rule 11(c)(1)(C) Plea Agreement, apply a total offense level of 43, and conclude that Defendant is in Criminal History Category I, yielding a Guidelines range of life in prison.  Pursuant to the Plea Agreement, the United States recommends a sentence of 270 months of imprisonment, to be followed by a lifetime term of supervised release.

Dated: April 29, 2020

William D. Hyslop
United States Attorney

*s/ David M. Herzog*
David M. Herzog
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on or after April 29, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to Defendant's counsel of record using the CM/ECF system.

*s/ David M. Herzog*
David M. Herzog
Assistant United States Attorney